All right, we'll take the last case on the calendar, 22-956, David Demarest v. Town of Underhill et al. Mr. Demarest, I understand you would like to reserve two minutes for rebuttal, is that right? Yes, Your Honor, thank you. Okay, I think we can set the clock appropriately and feel free to start. And again, if you want, you can raise or lower that podium, you see the little switch on the right to whatever brings the microphone to a comfortable height. Thank you, Your Honor. May it please the Court. I, David Demarest, am representing myself due to the fact-dependent nature and extreme duration of conduct leading to the claims at issue today. When I bought my home more than 20 years ago under a new dwelling permit issued to a 51.64-acre parcel on New Road, which is also known as Highway 26, no reasonable person could have ever predicted municipal defendants would willfully act, both individually and in collusion, to relentlessly and increasingly take from my bundle of clearly established property rights. If I may emphasize three points today, they will be, first, the proper legal framework to consider the motion to dismiss takings and associated due process claims after Nick corrected the error of Williamson County, and second, the importance of a fair and feasible standard of review combined with genuine facts are required to apply claim preclusion to causes of action presently before the Court. And Mr. Demarest, if you wouldn't mind addressing, we know that this is one in a series of cases that have come before various courts, including, we understand, the Vermont Supreme Court. If you could take a minute during your presentation to explain why some of these cases or some of these claims are not precluded by virtue of the fact that there have been other cases decided before this one. Thank you. You understand my point. Yes. Yes. Vermont law. Yes. Thank you, Your Honor. Thank you, Your Honor. In relation to claim preclusion, there is no nucleus of operative fact from prior claims and present claims because the Kafkaesque maze of administrative proceedings in both the reclassification and the road maintenance considerations, which were actually handled non-chronologically, were all deferential to municipal defendants' discretion. So they had to ratify the discretion of the defendants because the Vermont courts, due to the statutory construction of 19 VSA 701 subsection 2, as applied due to the Ketchum precedent, eliminated the district court non-deferential jurisdiction. And But the Vermont court did hold that there was claim preclusion. And we have to follow them. Interestingly, there was a dissent and the dissenter is in our court, but that makes no difference. We have to follow what the Vermont court said about claim preclusion. I agree, Your Honor. However, the critical detail that I need to emphasize is if you look at A200 towards the third paragraph from the bottom, quote, no fact finding. So when it came to a Rule 75 deferential administrative appeal, there was a structural due process violation in that the municipal defendants were permitted to create their own record strategically to affect that taking over. Sir, your red light has come on, but since you're answering a question, why don't you keep talking for a minute? We will not deduct it from your two minutes. Just take an extra minute to answer Judge Calabresi's question. Thank you, Your Honor. So the difference between ratifying and making an order. The reclassification only dealt with whether or not it was going to be classified as a road or as a trail. And the catch-em precedent is an error in saying that downgrading a road is not a taking. This issue cannot then have any merits before the Vermont courts because as a matter of And all of the prior claims involved at deferential discretion of the defendants, except for, I'll point out, the 2001 attempt to reclassify 10 Highway 26 was not valid, and that's on A193, and the County Road Commissioners, which actually found fully with the petitioners of which I was a co-party on A207. So the critical issue is the jurisdiction of the Vermont courts should be non-deferential involving claims which may, but not that they are, but that they may implicate a taking of private property rights. Mr. Demarest, I have another question which may not be ultimately germane because we're dealing with so many of these obstacles to the merits, but I did want to ask about the merits. The underlying takings claim is that, in effect, you have a property right to a well-maintained road because there was a well-maintained road there when you bought the property? No, Your Honor, there's different facets. I'd just like to understand, your ultimate claim here is a taking of an aspect of your property rights. And as I understand it, what we're fighting about is, in effect, an obligation on the part of the town to maintain a road because there was a road there all along. I'm just trying to understand that. So may I proceed? Yeah, please go ahead and answer the question. So thank you. So there's a nuance there, and in relation to public road maintenance, it actually is within the record that the Class 3 segment, the municipal defendants receive state money to maintain while refusing to do so. However, the claims at issue today are one, the 19 VSA 717C statutory self-executing vested right of a landowner's access when a town highway is discontinued. And in the case of the reclassification, which is more properly termed a discontinuance as a town highway, because a town highway, as a matter of Vermont law, is not, or sorry, a legal trail is not a town highway according to Vermont law. And then the other thing is, if a discontinuance were to occur, the vested property right at the time the town highway was first laid out guaranteed a reversion in property interest where the property would cease to be public, and it would be both the private right of way for abutters, and it would be the right of the property owners to exclude and exercise all the benefits of ownership from that former town highway. Is the point that you now have to spend money maintaining this road, whatever we call it, or is the point that you cannot develop the land as you might otherwise be able to do if there were a highway? Just to understand what's going on. Yes, so the second point you made, I have been denied reasonable investment backed returns. I've done all the engineering necessary for a nine lot subdivision, soil, setbacks, all that. In other words, the fact that they've changed it from a highway to a trail makes it now essentially impossible for you to develop that land in the way you would have been if it had been a highway. Correct with one small caveat. It's up to their discretion. So if a different property owner had it, they could grant that access. I think we understand, and you've reserved two minutes for rebuttal, so we'll come back to you. Yes, Your Honor, and in terms of spatial layout, both of these materials were referenced. I don't know if I can give them to the court. No, the way we work in the Court of Appeals is whatever the record is that was developed, all the materials that you may have filed in the district court come to us. But once it comes on appeal, we basically can't add things to the record. We appreciate that you may have brought them as aids to the court. Well, they're also referenced in the pleadings. In that case, we'll have access to them if we need to. We can get anything we need from the district court. Great, thank you. That's not the appendix. So thank you very much. We'll come back to you in a minute, but why don't we hear from Mr. Kite for the appellee. Good morning, may it please the court. To come straight to, I think, what is the central concern here about the nature of the highway and the right-of-way. The way highways are laid out in Vermont is the town select board identifies a road of a certain width and then lays out and establishes the road and then compensates the landowners. And usually those roads are about three rods in width. Then, after that process happens, they remain a town road or a town highway and a public right-of-way until the town decides to discontinue the road. And that discontinuance is a throwing up of all town rights in the right-of-way and a relinquishment of the public access to that property. And Mr. Demers is correct that when that process occurs, the right-of-way, whatever it is, will revert to the adjoining landowners, usually down the center line, unless there's some sort of clarity about the road not lying on one side of the property or the other. But in this case, that discontinuance did not happen because Vermont law allows for that public right-of-way to be used in a variety of ways. It can be either a traveled surface by vehicle, in which case it has to meet certain classifications for purposes of getting state money and width and safety measures for the roads. Or it could be downgraded to a legal trail, in which case it remains a public right-of-way and is available for pedestrian traffic. Let me understand. When that happens, the person may not be able, as of right, to develop their land. If there were a discontinuance, that person would be able, taking over that, to make that the kind of road access that would allow the person to develop the land. But by using this device, what has happened is that whereas before the land could be developed, now it cannot. Now, isn't that a very different thing? Now, we may not be able to get to any of that because of Vermont decisions, but isn't the real issue here that the party says by doing this, you have both done something which kept me then from developing, and doing anything that I could do to make it develop. Isn't that what's going on here? I'm not sure I understand the distinction you and I was trying to make, because prior to downgrading to a legal trail, the property owner had limitations on what they could do to develop their property because it was a right-of-way. And that limitation extended the full width of the public right-of-way, all three roads, even though the traveled surface may only take up 20 feet. Now, three roads is like 50 feet. And the town right-of-way, the town still maintains control over that right-of-way and imposes restrictions on the landowner's opportunity to develop that property. He can do it as long as it's not inconsistent with the public purposes to which the road is being put. And all that's happened is that this public right-of-way has changed from a vehicular public right-of-way to a pedestrian public right-of-way. Did I misunderstand? I thought that Mr. Demarest's problem was not about wanting to develop this particular strip that is now a road, but that he can't develop his entire acreage because there's not going to be any way and no one's going to want to buy a lot that can't be reached by vehicle. Yes. And the change in circumstance that produced that consequence for him occurred in 2012 when the town went ahead and reclassified the road. Which is something that the town tried to do even before he bought the property. The town did that in 2001. They did it wrongly because they failed to record a single piece of paper. And, you know, sometimes that's enough. And it was in this case. And so the town went ahead and redid it in 2012, doing exactly what they tried to do in 2001. At that point, everything that Mr. Demarest needed to understand that his property rights might be diminished in some way existed. And now we're here in 2021. And that causes your limitations argument. Yes. Statute of limitations. Okay. I think we understand your side. Mr. Demarest, you've reserved two minutes for rebuttal. And as you've seen with the other lawyers who come up when it comes to rebuttal, we try to hold to the timeline. So you have two minutes. Thank you, Your Honor. First, I would like to point out in relation to the statute at the time the town highway was laid out would be controlling on whether or not there was a reversionary property right. And section 30904 is very clear. Title to a discontinued highway when a town highway is discontinued. And it's very clear that that would be for town highway purposes. And that vested private right, which coexists at the time that the town highway was established, is what has been taken not whenever they did the reclassification, because that was a very narrow administrative proceeding, which as a matter of statutory construction did not involve any alteration. And I'd like to really emphasize that the town's own trail ordinance clearly preserved the compelling personal and business access rights of any interested party. So it could not actually accrue a takings claim at that time. I would argue that was a strategic move. And when it comes to the 2001 reclassification attempt, I would like to bring your attention to A186, where it very concisely shows why the town highway reclassification that was alleged in 2001 did not occur, because they didn't want to allow the right to appeal, as those meeting minutes are indicative of. They have consistently tried to erode different facets of property rights gradually over time, similar to Sherman versus the town of Chester, where if you take any one slice of that pie, you might not have eaten the whole pie. But if you keep taking every single slice away, there is nothing left for the private rights that were previously clearly established. And the Supreme Court in both Nick and the Cedar Point Nursery decisions is very clear that private property rights are not second class rights. So I would like to conclude that it would be perverse to allow the town to use the same delay to escape liability. Okay. Thank you very much. Again, well argued on both sides. We appreciate the presentations. We will go back over the briefs. And for now, though, we are taking this as we are taking all the cases today on submission, as well as, I think I said earlier, the three motions that are on the calendar are also on submission. So we would ask the clerk to send us to adjourn the court. The court is adjourned.